# In the United States Court of Federal Claims

No. 11-866C
(Filed November 7, 2012)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | * |
| **TAMMY T. SILBAUGH,** | * Military pay; denial of request to increase disability rating; Physical Disability Board of Review, 10 U.S.C. § 1554a (Supp. II 2008); 38 U.S.C. §§ 4.14, 4.126(d) (2011) ("VASRD") (pyramiding of disabilities); VASRD § 4.129 (post-traumatic stress); VASRD § 4.130 (major depressive disorder). |
| Plaintiff, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |
| * * * * * * * * * * * * * * * * * * * * * * * | * |

Noel D. Culbert, Dewitt, MI, for plaintiff.

James R. Sweet, Washington, DC, with whom was Acting Assistant Attorney General Stuart F. Delery, for defendant.  Capt. Rachel A. Landsee, U.S. Army Litigation Division, Fort Belvoir, VA, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This case is before the court after argument on cross-motions for judgment on the administrative record directed to the legal sufficiency of review of a former servicemember's claim for disability retirement by the Department of Defense ("DoD") Physical Disability Board of Review (the "PDBR").  Plaintiff argues that the PDBR decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law because the PDBR failed to conduct a thorough review and applied erroneous standards or neglected to apply applicable standards.  The key points of contention are whether the PDBR properly considered the Department of Veterans Affairs (the "DVA") ratings of plaintiff's conditions under Department of Defense Instruction ("DODI") 6040.44, Encl. 3 ¶ 5.a.(4) (2009), and whether the PDBR properly declined to separately rate plaintiff's conditions to avoid impermissible "pyramiding" under 38 C.F.R. ("VASRD") §§ 4.14, 4.126(d) (2011).

**FACTS**

I. <u>Background and Facts</u>

Tammy T. Silbaugh ("plaintiff") enlisted in the U.S. Army Reserve (the "Army") on September 7, 2006. AR 948. Approximately one month following her enlistment, plaintiff lost her twenty-two-month-old daughter to a congenital defect. <u>Id.</u> at 753. During her second week of basic training at Ft. Leonard Wood, Missouri, on February 6, 2007, plaintiff twice fell on her back and hip from a distance of less than ten feet on an obstacle training course. 1/ <u>Id.</u> at 752-53, 759. The earliest medical records relating to treatment for the falls date to February 10, 2007. <u>Id.</u> at 878. As of February 14, 2007, plaintiff was moved to the Replacement Holding Unit. <u>Id.</u> at 749, 752.

    1. <u>The Medical Evaluation Board ("MEB") evaluation and decision</u>

Plaintiff was referred to the MEB, which issued a Medical Record Report on June 27, 2007. <u>Id.</u> at 759-63. The June 27, 2007 MEB report explained:

> This Servicemember continues to have neck, back, hip, bilateral upper extremity and bilateral lower extremity pain. The back, neck and hip pain are intermittent; however, the pain is daily. The patient states the daily pain is 6 out of 10. Exacerbation of this pain is caused by prolonged standing, prolonged walking and prolonged sitting. With exacerbation the pain reaches 10 out of 10.

<u>Id.</u> at 762. The MEB also described the results of several imaging studies of plaintiff's lumbar, thoracic, and cervical vertebrae. <u>Id.</u> at 761. A June 21, 2007 MRI of her cervical vertebrae revealed a "disk protrusion," "mild spinal stenosis," and "moderate bordering severe neuroforaminal stenosis." <u>Id.</u> X-rays and MRIs of plaintiff's lumbar and thoracic

---

    1/ The PDBR found that plaintiff's medical condition began "after two falls." AR 4. Plaintiff's medical records reflect one fall, <u>see, e.g.</u>, AR 738 (PEB report of proceedings dated Nov. 5, 2007), 865 (plaintiff's handwritten Report of Medical Assessment dated May 9, 2007), but the most consistent rendition is captured by the Medical Evaluation Board (the "MEB") Medical Record Report Addendum dated October 10, 2007, because plaintiff thereafter submitted a handwritten statement of her disagreement with the MEB narrative and did not dispute that statement, <u>see id.</u> at 748-51 (plaintiff's handwritten appeal of MEB proceedings dated Oct. 16, 2007). In any event, the PDBR accepted the rendition more favorable to plaintiff.

vertebrae, however, were negative or showed "no significant abnormalities." Id. The MEB's June 27, 2007 report noted that after her falls plaintiff had been evaluated by both a neurologist and a psychiatrist, receiving separate diagnoses of fibromyalgia and depression. AR 762. The neurologist concluded that plaintiff's "symptoms were primary [sic] musculoskeletal and/or could be on the basis of fibromyalgia." Id.

A July 2, 2007 follow-up examination by Dr. Mike Luzecky, a neurologist, revealed that plaintiff had a herniated disk and "mild-to-moderate foraminal stenosis and mild spinal stenosis." AR 758. Dr. Luzecky also noted that plaintiff was experiencing pain in both arms and "left cervical and occipital headaches." Id. Dr. Luzecky concluded that plaintiff had "chronic pain syndrome" and speculated that her herniated disk was not causing the symptoms in her arms or legs, but may have contributed to the headaches. Id.

Dr. Miriam B. Borden, a rheumatologist, conducted another follow-up examination on August 14, 2007, and found that plaintiff "was tender wherever light pressure was applied." Id. at 767. Dr. Borden concluded that plaintiff's "clinical presentation is most consistent with fibromyalgia," but noted an "incongruence of objective findings with [plaintiff's] symptoms." Id.

On October 3, 2007, Dr. Will H. Hoyt, an osteopathic physician, provided an addendum to the MEB Medical Record Report. Id. at 752-57. Dr. Hoyt described plaintiff's mental condition:

> She reports that she has been feeling overly anxious in crowded environments, having difficulty sleeping and having nightmares about Replacement Holding Unit. She has also been crying frequently out of her pain and frustration and feeling overwhelmed. She feels that she has had a "loss of honor" due to her inability to continue with training. She admitted to having a passive death wish as well as fleeting suicidal thoughts a few times each week.

Id. at 752. Dr. Hoyt also noted that plaintiff "does not have any disturbing intrusive memories consistent with post[-]traumatic stress disorder." Id. at 755. In assessing the cause of plaintiff's depression, Dr. Hoyt explained that plaintiff "has consistently denied that her depression might be actually causing her pain rather than her pain causing her depression." Id. at 752. Plaintiff disagreed with Dr. Hoyt, however, that her pain can be explained "as a combination of grief about her daughter, fear of continuing on with her life, and hypochondriasis and modeling from her husband's disabled role." Id. at 755. Dr. Hoyt diagnosed plaintiff with "pain disorder associated with both psychological factors and a general medical condition." Id. at 756. Dr. Hoyt opined that plaintiff's "recent diagnosis of fibromyalgia is a plausible conclusion and a diagnosis that likely does explain her symptoms

better than my working diagnosis of pain associated with psychological features and general medical condition." Id. at 755. Dr. Hoyt concluded that plaintiff's degree of military psychiatric impairment was "minimal." Id. at 756-57.

On October 11, 2007, shortly after Dr. Hoyt's examination, the MEB concluded that plaintiff failed to meet retention standards under two diagnoses: "Pain Disorder Associated with both Psychological Factors and General Medical Condition," and "Fibromyalgia." 2/ AR 746. The MEB also diagnosed plaintiff with "[c]ervical spinal stenosis," but noted that she met medical retention standards under that diagnosis. Id. Plaintiff disagreed with the MEB's findings and conclusions and submitted her appeal on October 17, 2007. Id. at 747-51. After considering plaintiff's appeal, the MEB confirmed its findings and conclusions on October 19, 2007. Id. at 747.

2. The informal PEB ("IPEB") decision

The IPEB considered plaintiff's case on October 30, 2007. Id. at 738-39 (record of IPEB proceedings). Applying the VASRD, the IPEB assigned plaintiff a diagnosis of fibromyalgia with a disability rating of 20%. Id. The IPEB explained that plaintiff's symptoms – which included widespread musculoskeletal pain, fatigue, sleep disturbance, joint stiffness, headaches, depression, and anxiety – were "often precipitated by environmental and emotional stress and by overexertion." Id. at 738. Turning to the MEB's other diagnosis of plaintiff – "Pain Disorder Associated with both Psychological Factors and General Medical Condition" – the IPEB found that the diagnosis "cannot be separately rated due to overlapping symptoms, and is included in this [fibromyalgia] rating." Id. The IPEB also considered plaintiff's third diagnosis of cervical spinal stenosis, but found it not unfitting and therefore not ratable. Id.

On November 2, 2007, plaintiff signed a statement acknowledging that the PEB Liaison Officer had advised plaintiff of her legal rights. Id. at 743-44. Plaintiff also signed a form on November 5, 2007, that reflected her concurrence with the IPEB results and waiver of a formal hearing. Id. at 740. Plaintiff was discharged from the Army effective November 28, 2007, with a 20% disability rating and disability severance pay. Id. at 907-08.

---

2/ The MEB did not cite to the VASRD's diagnostic codes; it utilized the categories of disorders listed in Army Regulation 40-501 and the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-UV"). See AR 746; Def.'s Ltr. filed Oct. 5, 2012. Although the MEB's first diagnosis – "Pain Disorder Associated with both Psychological Factors and General Medical Condition" – is not listed in the VASRD, it appears in DSM-IV § 307.89. See Def.'s Ltr. filed Oct. 5, 2012.

4

### 3. The DVA evaluation and decision

Shortly after her separation from the Army, plaintiff applied to the DVA for compensation on November 30, 2007.  See id. at 69.  By decision dated May 20, 2008, the DVA rated plaintiff for the following conditions: major depressive disorder with an evaluation of 70%, fibromyalgia with tension headaches with an evaluation of 20%, cervical degenerative disc disease with an evaluation of 10%, lumbar/thoracic strain with an evaluation of 10% and hypertension with an evaluation of 0%.  Id. at 59.  Per the "combined rating table," the DVA assigned plaintiff a combined rating of 80%.  Id.

The DVA's 70% rating for plaintiff's major depressive disorder was based on plaintiff's service treatment records and DVA examinations.  Id. at 59, 69-71.  A January 3, 2008 DVA psychiatric evaluation explained that the unexpected death of plaintiff's daughter was a significant social stressor and also noted that plaintiff "experienced significant emotional abuse from her sergeant in the military while she was awaiting discharge."  Id. at 726.  Plaintiff's military psychiatrist 3/ was telephoned during the evaluation and confirmed the emotional abuse from plaintiff's commanding officer.  Id.  The military psychiatrist also shared that "he does not believe that [plaintiff] has fibromyalgia, but rather is experiencing psychosomatic effects from depression and displaced grief."  Id.

A March 24, 2008 DVA general medical examination, conducted by Dr. Mary Q. Burke, concluded that plaintiff had tension headaches, hypertension, fibromyalgia, lumbar thoracic muscle strain, and cervical spine degenerative joint disease and cervical spine degenerative disc disease.  Id. at 113, 117.  Dr. Amy M. Connell conducted a psychiatric evaluation the same day and diagnosed plaintiff with "moderate to severe major depressive episode" and "pain disorder associated with both psychological factors and general medical condition."  Id. at 117, 122-23.  Dr. Connell's lengthy report indicated that plaintiff had "onset of major depressive episode during military experience" and noted her reports of "harassment and abuse" in the Replacement Holding Unit.  Id. at 123.  Although Dr. Connell held the opinion that plaintiff's "pain complaints are significantly affected by and aggravated by her significant depressive symptoms," she also concluded that plaintiff's "depression and pain disorder are intertwined such that further delineation to provide separate GAFs [Global Assessment of Functioning] is not possible at this time."  Id.  Dr. Connell also noted that plaintiff's "depressive symptoms are at least as likely as not playing a role in [the] ongoing severity, exacerbation, and maintenance of the pain."  Id. at 124.

---

3/ The January 2, 2008 psychiatric evaluation does not identify the name of the military psychiatrist.

5

### 4. The PDBR decision

On March 12, 2009, plaintiff filed her application with the PDBR seeking a rating change on the ground that, in addition to fibromyalgia, "secondary conditions should have been considered and rated." Id. at 8.

The DoD established the PDBR in 2008, see 10 U.S.C. § 1554a (Supp. II 2008), to "reassess the accuracy and fairness of the combined disability ratings assigned [s]ervice members who were discharged as unfit for continued military service by the Military Departments with a combined disability rating of 20 percent or less and were not found to be eligible for retirement." DODI 6040.44 ¶ 4.a. The PDBR is not identical to a military correction board. Congress created the PDBR to review and correct DoD disability ratings only for certain individuals discharged between September 11, 2001 and December 31, 2009. See Martinez v. United States, 94 Fed. Cl. 176, 179 n.1 (2010). 4/

DODI 6040.44, which provides instructions for PDBR operation and management, instructs the PDBR to review the disability ratings of covered individuals in accordance with the Veterans Affairs Schedule for Rating Disabilities ("VASRD") in effect at the time the covered individual separated from the military. DODI 6040.44, Encl. 3, ¶ 5.e.(1). In arriving at its recommendations, the PDBR also shall use all applicable statutes and any directives in effect at the time of the separation, to the extent those statutes and directives to do not conflict with the VASRD. Id., Encl. 3, ¶ 4.d. If the DVA has provided a disability rating for a covered individual, the PDBR "should compare any DVA disability rating for the specifically military unfitting condition(s) with the PEB combined disability rating and consider any variance in its deliberations and any impact on the final PEB combined disability rating, particularly if the DVA rating was awarded within 12 months of the Service member's separation." Id., Encl. 3, ¶ 5.a.(4).

For each case before the PDBR, the PDBR shall review the complete case record that was the basis for the PEB rating determination and shall, to the extent feasible, "collect all the information necessary for competent review and recommendation." Id., Encl. 3, ¶ 5.d. DODI 6040.44 instructs the PDBR to "impartially readjudicate cases upon which review is requested or undertaken on its own motion" and to "offer fair and equitable determinations pertaining to the assignment of disability ratings." Id. ¶ 4.b. The PDBR also is authorized to change a previous "fit" determination to "unfit." Id., Encl. 3, ¶ 4.e.(5).

---

4/ The parties' briefing did not focus on the purpose and legislative history of the PDBR, but a helpful discussion is available in the few opinions addressing the PDBR. See Martinez, 94 Fed. Cl. at 179 n.1; Stine v. United States, 92 Fed. Cl. 776, 785 n.21 (2010).

6

In a Record of Proceedings dated February 2, 2011, the PDBR recommended that there be no recharacterization of plaintiff's disability and separation determination. AR 7. The PDBR considered plaintiff's application form with attachments, Service Treatment Record, and DVA Treatment Record. Id. The Record of Proceedings included a chart comparing the PEB and VA ratings and a summary of the PDBR's findings regarding each rated condition. Id. at 4.

A "significant component" of the PDBR's review was whether a separate unfitting and separately ratable psychiatric condition existed at separation. Id. at 5. The PDBR noted that VASRD § 4.71a applies the code for fibromyalgia with or without depression, i.e., that depression may be regarded as a component symptom of fibromyalgia. 5/ Id. However, the VASRD does not specify whether component symptoms for fibromyalgia may be rated separately. Therefore, the PDBR considered the proscription of VASRD § 4.14 – "avoidance of pyramiding" – which provides that "[t]he evaluation of the same disability under various diagnoses is to be avoided." See id. (citing VASRD § 4.14). The PDBR explained that the VA neglected to consider the anti-pyramiding provision of § 4.14, whereas the IPEB decision properly reflected a consideration of anti-pyramiding:

> § 4.14 (avoidance of pyramiding) makes it clear that any included condition cannot be separately rated unless its contribution to the disability for a 5025 rating can be identified and separated from the rating. The VA rating decision was silent regarding how the § 4.14 proscription was avoided in the separate ratings it conveyed. The PEB's DA Form 199 specified that its rationale for not providing separate ratings was grounded in § 4.14, stating that the pain disorder "cannot be separately rated due to overlapping symptoms, and is included in this rating." Both the MEB and VA psychiatrists made it clear that the pain disorder was integral to the associated depression. Both expressed an opinion that a repressed grief reaction to her child's death could be a significant contribution to (if not the cause for) the somatic pain symptoms. Separating pain disorder and depression in this case is thus clinically impossible and devolves into a futile "chicken or egg" deliberation.

---

5/ VASRD § 4.71a assigns diagnostic code 5025 to "[f]ibromyalgia (fibrositis, primary fibromyalgia syndrome) [w]ith widespread musculoskeletal pain and tender points, with or without associated fatigue, sleep disturbance, stiffness, paresthesias, headache, irritable bowel syndrome, depression, anxiety, or Raynaud's-like symptoms[.]" VASRD § 4.71a.

Id. The PDBR did not discuss VASRD § 4.126(d), a related provision which explains that "[w]hen a single disability has been diagnosed both as a physical condition and as a mental disorder, the rating agency shall evaluate it using a diagnostic code which represents the dominant (more disabling) aspect of the condition (see § 4.14)." VASRD § 4.126(d). However, the PDBR cited the military psychiatrist's conclusion that plaintiff's "degree of military psychiatric impairment" was "minimal," and stated that "[a]ll of the impairments cited in the NARSUM [narrative summary] were physical." AR 5. The PDBR therefore found that it was "difficult to argue that there was unfitting purely psychiatric impairment" in this case. Id. Applying a reasonable doubt standard rather than the "fair and equitable standard" specified in DODI 6040.44 ¶ 4.b., 6/ the PDBR did not find reasonable doubt favoring a separate psychiatric rating under VASRD § 4.130. 7/ Id. The PDBR therefore concluded that "the pain disorder with psychological factors/major depression psychiatric condition . . . is properly rated as a component of fibromyalgia and not as a separately unfitting condition." Id. at 6.

The PDBR next considered whether plaintiff's case met the criteria for the highest fibromyalgia rating, 40%, which requires a finding of pain "'constant or nearly so, and refractory to therapy.'" Id. at 5-6 (quoting VASRD § 4.71a). Noting that the military examination described the pain as "daily intermittent" and that the VA examination described flares of back pain "once a week" and flares of neck pain "daily," the PDBR determined that neither examination lent support to a finding of "refractory" pain. Id. at 5. The PDBR instead decided that the determinative issue was the duration of pain, not its severity, and noted that both the IPEB and DVA found that the 40% threshold was not met. Id. at 5-6. Therefore, the PDBR concluded that the record did not present a reasonable doubt that should be resolved in favor of a 40% rating and that a 20% rating for fibromyalgia was "fair" in this case. Id. at 6.

---

6/ VASRD § 4.3 provides that when "a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant." VASRD § 4.3. In contrast, DODI 6040.44, ¶ 4.b. instructs the PDBR "to offer fair and equitable recommendations pertaining to the assignment of disability ratings." DODI 6040.44, ¶ 4.b.

7/ VASRD § 4.130 provides a schedule for rating various mental disorders. Utilizing nomenclature from the DSM-IV, VASRD § 4.130 rates mental disorders under the following categories: "Schizophrenia and Other Psychotic Disoders," "Delirium, Dementia, and Amnestic and Other Cognitive Disorders," "Anxiety Disorders," "Dissociative Disorders," "Somatoform Disorders," "Mood Disorders," "Chronic Adjustment Disorder," and "Eating Disorders." VASRD § 4.130.

With respect to plaintiff's claimed cervical spine condition, the PDBR found that the "neck symptoms played a part" in her fibromyalgia, but were comprehended within that rating. Id. The PDBR also considered the MEB medical examiner's conclusion that the cervical spine condition met retention standards and noted that the record did not contain documentation of any physical impairments related to a cervical spine condition. Id. Therefore, the PDBR found no justification for recommending that the cervical spine condition was unfitting and separately ratable. Id.

Regarding plaintiff's thoracolumbar spine condition, the PDBR noted that no objective evidence in the record attributed any specific pathology to her thoracolumbar spine. Id. Because plaintiff's back pain was a "component of overall musculoskeletal complaints," the PDBR concluded that the thoracolumbar spine condition was "justifiably . . . not treated as a separate condition but as a component of the overall pain disorder." Id. The PDBR also considered and rejected hypertension and dizziness as separately unfitting and ratable conditions, after noting that both the MEB and DVA had considered them. Id.

II. Procedural History

Following the PDBR's decision, plaintiff filed a complaint in the United States Court of Federal Claims on December 8, 2011, alleging that she was improperly denied retirement pay and medical benefits to which she is entitled. Plaintiff amended her complaint on April 5, 2012, and defendant filed a motion to dismiss and for judgment on the administrative record on April 19, 2012. After briefing was completed on June 27, 2012, the court entered an order on August 20, 2012, asking the parties to address the applicability of VASRD §§ 4.126(d) and 4.129. That briefing was completed on September 20, 2012, and argument was held on October 4, 2012.

**DISCUSSION**

I. Standard of review

Defendant moved pursuant to RCFC 12(b)(6) to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. See RCFC 12(b)(6). "The purpose of [RCFC 12(b)(6)] . . . is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail[.]" Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). In resolving a RCFC 12(b)(6) motion, the court must assess whether plaintiff's complaint adequately states a claim for relief under the implicated statute and regulations and whether plaintiff has made "allegations plausibly suggesting (not merely consistent with)" entitlement to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

The court must "draw on its judicial experience and common sense" when determining whether or not plaintiff's entitlement to relief is plausible. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

The parties also filed cross-motions for judgment on the administrative record pursuant to RCFC 52.1, which provides a procedure for parties to seek an expedited trial on a "paper record, allowing fact-finding by the trial court." Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Defendant urges this court to review the PDBR's decision under the same standard that applies to a decision from a military correction board. See Def.'s Br. filed Apr. 19, 2012, at 16-17. The two entities are not identical, however, and the PDBR was intended to function less formally than a correction board. See Pl.'s Br. filed May 17, 2012, App. at A1 (table comparing the PDBR with boards of correction). Accordingly, a heightened evidentiary standard should not govern this court's review of a PDBR decision. Cf. Richey v. United States, 322 F.3d 1317, 1326 (Fed. Cir. 2003) (explaining that a "presumption of regularity" attaches to correction board decisions); Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir 1986) (applying a "cogent and clearly convincing evidence" standard to a plaintiff challenging a correction board decision). The court reviews the PDBR decision under a standard that is no more strict than the baseline deferential standard governing the decision of a correction board – the court "will not disturb the decision of the [board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Barnick v. United States, 591 F.3d 1372, 1377 (Fed. Cir. 2010) (citing Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005)).

II. Waiver

   1. Whether plaintiff waived her right to challenge the IPEB's determination that her other diagnoses were not separately ratable

The parties have devoted considerable efforts to debating whether plaintiff waived her right to challenge the IPEB's medical determinations. Defendant points out that plaintiff signed a form waiving her right to appeal the IPEB decision to a formal PEB (the "FPEB"). Def.'s Br. filed Apr. 19, 2012, at 17. Therefore, defendant argues that the court cannot review the IPEB's medical determination that plaintiff's diagnosis of "pain disorder associated with both psychological factors and general medical condition" could not be separately rated from plaintiff's fibromyalgia. Id. at 20-21. Defendant also argues that plaintiff's waiver prevents the court from reviewing the IPEB's medical determinations that plaintiff's cervical condition

and mental disorder were not unfitting. 8/ Id. at 21. Defendant's argument rests on the assumption that the PDBR is the equivalent of a board for correction of military records. Such is not the case, as the instruction sheet accompanying DD Form 294 – the Application for Review by the PDBR – graphically illustrates. See Pl.'s Br. filed May 17, 2012, App. at A1; see also *Frequently Asked Questions*, HEALTH.MIL, http://www.health.mil/About_MHS/Organizations/MHS_Offices_and_Programs/pdbr/pdbr-faqs.aspx#chart (last visited Nov. 6, 2012) (correction board "correct[s] errors in records and/or remove[s] an injustice," whereas PDBR reviews rating for "fairness and accuracy").

The PDBR reviewed plaintiff's case *de novo*. See DODI 6040.44 ¶ 4.b. (instructing the PDBR to "impartially readjudicate cases upon which review is requested or undertaken on its own motion"). DODI 6040.44 requires the PDBR to issue recommendations based on the complete case record that was before the PEB and, to the extent feasible, "all the information necessary for competent review and recommendation." Id., Encl. 3., ¶ 5.d. Accordingly, the PDBR reviewed both plaintiff's military and DVA medical records to determine the "accuracy and fairness" of plaintiff's disability rating. AR 7; see DODI 6040.44 ¶ 4.a. Defendant marshals a host of arguments to delimit the permissible subjects that plaintiff can address on judicial review, but the fact remains that the PDBR, consistent with its mandate, reached its decision in this case by assessing and comparing the various medical determinations in plaintiff's medical records. See AR 5-6. Therefore, this court will review the PDBR's decision and consider plaintiff's challenges to the PDBR's decision in light of the record that the PDBR evaluated.

2. <u>Whether plaintiff waived her claim that the decision not to separately rate her mental disorder violated VASRD § 4.129</u>

Plaintiff contends that the PDBR's decision not to separately rate plaintiff's mental disorder was contrary to VASRD § 4.129. Pl.'s Br. filed May 17, 2012, at 25-26. VASRD § 4.129 provides:

> When a mental disorder that develops in service as a result of a highly stressful event is severe enough to bring about the veteran's release from active military service, the rating agency shall assign an evaluation of not less than 50 percent

---

8/ Defendant's argument that plaintiff waived review as put forward in its motion for judgment on the administrative record essentially duplicates defendant's motion to dismiss. The crux of both motions is that judicial review is limited to the PDBR decision – and cannot consider the IPEB decision. See Def.'s Br. filed June 18, 2012, at 3 n.2. Accordingly, the court considers defendant's motion to dismiss together with its waiver defense.

and schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted.

VASRD § 4.129. Plaintiff's application to the PDBR listed "major depressive disorder" as a condition that should receive a separate rating. See AR 9. Defendant points out, however, that plaintiff's application never mentioned VASRD § 4.129 and never raised the claim that her mental disorder was the result of a "highly stressful event" and therefore required a separate rating under VASRD § 4.129. Def.'s Br. filed Apr. 19, 2012, at 21-22. Relying on corrections board cases, defendant argues that plaintiff waived her VASRD § 4.129 argument by failing to raise it before the PDBR. Id.

Defendant's reliance on corrections board cases is misplaced. As discussed above, the PDBR is not equivalent to a board for correction of military records. See, e.g., Pl.'s Br. filed May 17, 2012, App. at A1. In fact, the instruction sheet accompanying the application for PDBR review explicitly states that, unlike a servicemember seeking review by a correction board, a servicemember seeking PDBR review "need not allege anything, [sic] review accomplished upon request." Id. Because plaintiff was not required to raise her VASRD § 4.129 argument before the PDBR, plaintiff's failure to raise the issue could not have resulted in a waiver of her VASRD § 4.129 claim. This court therefore may consider whether the PDBR's decision not to separately rate plaintiff's mental disorder was contrary to VASRD § 4.129.

III. Whether the PDBR properly applied the VASRD standards in deciding that plaintiff's mental disorder was not separately ratable

1. Applicability of VASRD § 4.130

Plaintiff contends that the PDBR's decision not to separately rate her mental disorder was contrary to VASRD § 4.130. See Pl.'s Br. filed May 17, 2012, at 18-24. As discussed above, VASRD § 4.130 provides a schedule for rating various mental disorders, including "major depressive disorder." VASRD § 4.130. Although the DVA rated plaintiff 70% for major depressive disorder, AR 59, the PDBR declined to separately rate plaintiff's mental disorder due to the anti-pyramiding proscription of VASRD § 4.14, id. at 5. The PDBR made the precise finding that, because "[b]oth the MEB and VA psychiatrists made it clear that the pain disorder was integral to the associated depression[,]" and "[t]he VA rating decision was silent regarding how the § 4.14 proscription was avoided in the separate ratings it conveyed." Id. The PDBR's decision recited few additional details regarding the DVA's psychiatric evaluations of plaintiff. See id.

Plaintiff argues that the PDBR's decision not to separately rate plaintiff for major depressive disorder was not supported by substantial evidence and violated DODI 6040.44, which provides that the PDBR "should 'compare any DVA disability rating for the specifically military unfitting condition(s) with the PEB combined disability rating and consider any variance in its deliberations and any impact on the final PEB combined disability rating, particularly if the DVA rating was awarded within 12 months of the Service member's separation.'" Pl.'s Br. filed May 17, 2012, at 23-24 (quoting DODI 6040.44, Encl. 3., ¶ 5.a.(4)). Plaintiff contends that the PDBR failed to adequately compare and discuss the DVA's 70% rating for major depressive disorder and the rationale for that rating. Pl.'s Br. filed May 17, 2012, at 24. Characterizing the DVA's psychiatric evaluation as "extraordinarily detailed[] and eight pages in length," plaintiff nonetheless contends that the PDBR "missed or ignored almost the entire DVA psychiatric evaluation[.]" Id. Plaintiff especially takes issue with the PDBR's failure to discuss the DVA's findings that plaintiff suffered significant emotional abuse from her sergeant and commanding officer while awaiting discharge from the military and that plaintiff's "pain complaints are significantly affected by and aggravated by her significant depressive symptoms." Id. at 19-22.

During argument plaintiff directed the court to Petri v. United States, 104 Fed. Cl. 537 (2012), as an example of how the PDBR should have compared and analyzed the DVA rating in this case. Petri involved a servicemember who was diagnosed with post-traumatic stress disorder ("PTSD") after experiencing verbal and physical abuse while in the military. 104 Fed. Cl. at 539-40. Although the DVA rated Mr. Petri's PTSD at 50%, the PDBR upheld the military's 10% disability rating for PTSD. Id. at 544. In affirming the PDBR's determination, Judge Horn noted that the PDBR "gave extensive attention to the VA examination reports upon which the VA rating was based" and "discussed the rating assigned by the VA and thoroughly reviewed the basis for the VA's rating[.]" Id. at 567. Indeed, the PDBR recited several specific findings in the DVA's psychological evaluation of Mr. Petri that varied from the MEB's evaluation. Id. at 547-48. Plaintiff argues that the PDBR in this case should have undertaken a similarly extensive analysis of the DVA's psychiatric evaluations.

The in-depth analysis contemplated by Petri, however, comes into play because DODI 6040.44, Encl. 3, ¶ 5.a.(4) provides that the PDBR "should compare any DVA disability rating for the *specifically military unfitting condition(s)*[.]" DODI 6040.44, Encl. 3, ¶ 5.a.(4) (emphasis added). Plaintiff's mental disorder was never determined to be military unfitting. Consequently, an extensive analysis of the DVA's rating and deliberations regarding plaintiff's mental disorder was not required under DODI 6040.44, Encl. 3, ¶ 5.a.(4).

This case is also distinguishable from Petri because it involves the PDBR's application of the anti-pyramiding provision in VASRD § 4.14. The PDBR in the case at bar determined that the DVA failed to apply the anti-pyramiding proscription. See AR 5 (explaining that the

13

DVA "was silent regarding how the § 4.14 proscription was avoided in the separate ratings it conveyed"). Substantial evidence in the record supports the PDBR's determination that plaintiff's fibromyalgia and mental disorder had overlapping symptomatology and therefore could not be separately rated due to VASRD § 4.14. As the PDBR properly noted, the DVA psychiatrists indicated that the "pain disorder was integral to the associated depression." Id. Indeed, DVA psychiatrist Dr. Connell explained that plaintiff's "depression and pain disorder are *intertwined* such that further delineation to provide separate GAFs [Global Assessment of Functioning] is not possible at this time." Id. at 123 (emphasis added). Dr. Connell's finding is consistent with the PDBR's determination that "[s]eparating pain disorder and depression in this case is thus clinically impossible" and therefore supports the PDBR's conclusion that plaintiff's fibromyalgia and mental disorder had overlapping symptomatology. Id. at 5. Despite Dr. Connell's conclusion that plaintiff's symptoms were intertwined, the DVA separately rated plaintiff for "major depressive disorder and pain disorder" and fibromyalgia. Id. at 59, 69. By separately rating conditions with overlapping symptomatology, the DVA apparently ignored VASRD § 4.14, which prohibits "[t]he evaluation of the same disability under various diagnoses." VASRD § 4.14.

Plaintiff argues that the issue in this case is not pyramiding, but "whether a service member can receive separate ratings for depression and fibromyalgia." Pl.'s Br. filed May 17, 2012, at 27. As defendant correctly observes, however, plaintiff's characterization raises a distinction without a difference. See Def.'s Br. filed June 18, 2012, at 9. Plaintiff has cited no legal authority indicating that VASRD § 4.130 trumps the anti-pyramiding proscription of § 4.14. The PDBR correctly noted that the DVA was "silent" regarding anti-pyramiding and thus acted reasonably in declining to adopt the DVA's decision to separately rate plaintiff's mental disorder and fibromyalgia. See AR 5.

Plaintiff emphasizes the PDBR's failure to discuss the DVA psychiatrist's findings that plaintiff suffered significant emotional abuse in the Replacement Holding Unit while awaiting discharge from the military. Pl.'s Br. filed May 17, 2012, at 19-22. After correctly concluding that the DVA inexplicably failed to follow the anti-pyramiding provisions, however, the PDBR did not act arbitrarily or capriciously in affording less weight to the DVA's findings. The fact that plaintiff's depression may have worsened before her discharge does not obviate the fact that her depression and fibromyalgia exhibited overlapping symptomatology.

Substantial evidence also supports the PDBR's determination that plaintiff's mental disorder was not individually unfitting. As the PDBR noted, Dr. Hoyt concluded that plaintiff's degree of military psychiatric impairment was "minimal." Id. at 5, 756-57. The PDBR also observed that "[n]either of the psychiatric examiners noted serious vegetative symptoms such as incapacitating fatigue or cognitive symptoms which could be directly correlated with performance." Id. at 5. Although the PDBR is authorized to change a previous

"fit" determination to "unfit," see DODI 6040.44, Encl. 3 ¶ 4.e.(5), the DVA's rating in this case did not compel the PDBR to do so. The Army and DVA use the VASRD for different purposes. Whereas the Army applies the VASRD to determine whether a servicemember is fit to "reasonably perform the duties of his or her office, grade, rank, or rating," see Army Reg. 635-40 ¶ 1-1, the DVA uses the VASRD to determine a veteran's capacity to perform in the civilian world, see Stine v. United States, 92 Fed. Cl. 776, 795 (2010); see also VASRD § 4.1 ("The percentage ratings represent as far as can practically be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in *civil occupations*.") (emphasis added)) . The DVA's rating therefore did not compel the PDBR to find that plaintiff's mental disorder was individually unfitting.

 2. Applicability of VASRD § 4.129

Plaintiff also contends that she should have received a 50% disability rating under VASRD § 4.129, which provides for a temporary rating of at least 50% "[w]hen a mental disorder that develops in service as a result of a highly stressful event is severe enough to bring about the veteran's release from active military service[.]" See Pl.'s Br. filed May 17, 2012, at 25-26; VASRD § 4.129. Although § 4.129 does not precisely define what constitutes a "highly stressful event," the DVA has interpreted § 4.129 to apply "primarily" to PTSD. DVA, Schedule for Rating Disabilities; Evaluation of Residuals of Traumatic Brain Injury, 73 Fed. Reg. 54693, 54695 (Sept. 23, 2008).

Plaintiff argues that her two falls from an obstacle course and emotional abuse from her sergeant and commanding officer constitute "highly stressful events" falling within the purview of VASRD § 4.129. Pl.'s Br. filed May 17, 2012, at 25-26. At oral argument plaintiff relied on Petri, 104 Fed. Cl. at 539-40, to explain that verbal and emotional abuse could be the basis for a PTSD diagnosis and disability rating under VASRD § 4.129. Petri actually is unhelpful to plaintiff, because that case involved a servicemember who was diagnosed with PTSD by both the PEB and DVA. See id. at 544. In this case neither the MEB, IPEB, nor DVA diagnosed plaintiff with PTSD or indicated that her mental disorder developed as a result of a highly stressful event. See AR 59, 738-39, 746. Dr. Hoyt's examination noted that plaintiff "does not have any disturbing intrusive memories consistent with post[-]traumatic stress disorder." Id. at 755. Dr. Connell also did not diagnose plaintiff's mental disorder as PTSD and did not characterize plaintiff's mental disorder as the result of traumatic stress. See id. at 122-24. Because no evidence of traumatic stress or PTSD appeared in the record before the PDBR, the PDBR's decision not to separately rate plaintiff's mental disorder under VASRD § 4.129 was not arbitrary or capricious and was supported by substantial evidence.

IV. <u>Whether the PDBR's decision not to separately rate plaintiff's cervical condition, lumbar/thoracic spine condition, and other conditions was arbitrary, capricious, unsupported by substantial evidence, or contrary to law</u>

Plaintiff argues that the PDBR failed to adequately compare the DVA ratings and evaluations of her cervical condition, lumbar/thoracic spine condition, and other conditions, and therefore violated DODI 6040.44, Encl. 3, ¶ 5.a.(4). Because these conditions were never determined to be military unfitting, an extensive analysis of the DVA's rating and deliberations regarding these conditions was not required under DODI 6040.44, Encl. 3, ¶ 5.a.(4). See DODI 6040.44, Encl. 3, ¶ 5.a.(4) (providing that the PDBR "should compare any DVA disability rating for the *specifically military unfitting condition(s)*" (emphasis added)).

The PDBR determined that plaintiff's cervical and lumbar/thoracic spine conditions had overlapping symptomatology with her fibromyalgia and consequently could not be separately rated due to pyramiding concerns. See AR 6. The PDBR's decision to apply the anti-pyramiding provision was based on substantial evidence. The military neurologist concluded that plaintiff's "symptoms were primary [sic] musculoskeletal and/or could be on the basis of fibromyalgia," id. at 762, and Dr. Borden noted that plaintiff's "clinical presentation is most consistent with fibromyalgia," id. at 767. As discussed above, the DVA's ratings and analysis apparently ignored the anti-pyramiding proscription.

Substantial evidence also supports the PDBR's determination that plaintiff's cervical and lumbar/thoracic spine conditions were not separately unfitting. The June 2007 MRI of plaintiff's cervical vertebrae revealed only "mild" to "moderate" stenosis, AR 761, and Dr. Luzecky's follow-up examination confirmed that diagnosis, id. at 758. Dr. Luzecky also noted his view that plaintiff's herniated disk was not causing the symptoms in her arms or legs. Id. Moreover the "[r]ange-of-motion measurements for the cervical spine by both the MEB and the VA reflected modest limitations." Id. at 6. The DVA, indeed, had found that plaintiff had only a "mild" loss of motion. Id. at 25-26. Although the DVA provided a 10% rating for plaintiff's lumbar/thoracic spine condition, the DVA's rating does not compel the PDBR to find that this condition was unfitting. See, e.g., Stine, 92 Fed. Cl. at 795-96.

V. <u>Whether the PDBR's use of the reasonable doubt standard – rather than the fair and equitable standard – was harmless error</u>

Plaintiff also asserts that the PDBR improperly applied a "reasonable doubt" standard of review. Am. Compl. filed Apr. 5, 2012, ¶ 14. The record is confusing on this point. The PDBR in this case appeared to apply the reasonable doubt standard of VASRD § 4.3 in its analysis of each condition, see AR 5-6, but also recited the "fair and equitable" standard of

16

DODI 6040.44 ¶ 4.b., id. at 6 (explaining that the PDBR "remains adherent to the DODI 6040.44 'fair and equitable standard'").

To the extent the PDBR applied the reasonable doubt standard, the court finds that the PDBR's error was harmless.  VASRD § 4.3 provides that when "a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant." VASRD § 4.3.  Reasonable doubt is created, and the veteran must prevail, "when the positive and negative evidence relating to a veteran's claim for benefits are in 'approximate balance[.]'" Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001) (quoting 38 C.F.R. § 3.102 (2001)). In contrast, DODI 6040.44 ¶ 4.b. instructs the PDBR "to offer fair and equitable recommendations pertaining to the assignment of disability ratings."  DODI 6040.44 ¶ 4.b. DODI 6040.44, however, does not define or provide guidance on how to apply the fair and equitable standard.  Because the reasonable doubt standard actually tips the balance in favor of the veteran in cases where the evidence is in "approximate balance," see Ortiz, 274 F.3d at 1364, the PDBR's apparent use of the reasonable doubt standard in this case was harmless.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is denied; defendant's motion for judgment on the administrative record is granted, and plaintiff's cross-motion for judgment on the administrative record is denied.   The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED**.

No costs.

/s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge